UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

AZHAR A. AL HINDAWY,

               Plaintiff,

     v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

               Defendant.

CASE NO. 2:16-cv-00366 JLR JRC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

Noting Date: December 16, 2016

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed (*see* Dkt. 13, 14, 15).

After considering and reviewing the record, the Court concludes that the ALJ did not commit harmful legal error in the evaluation of plaintiff's Social Security application. For example, the ALJ failed to credit fully the opinion from an examining physician who

relied in part on plaintiff's report of auditory hallucinations, in part because the record demonstrated that during repeated mental status examinations, treatment providers indicated that plaintiff did not suffer from any hallucinations. The ALJ also offered germane reasons for failing to credit fully a lay opinion, noting that this opinion is offered by an individual who helped plaintiff complete her disability application and thus acted as an advocate and also that this lay opinion is not consistent with the record demonstrating that plaintiff could perform simple jobs part-time on a regular and continuous basis. Similarly, the ALJ did not err when failing to credit fully plaintiff's allegations and testimony, noting various inconsistencies between her allegations and the record.

Therefore, this matter should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, AZHAR A. AL HINDAWY, was born in 1973 and was 30 years old on the alleged date of disability onset of January 1, 2004 (*see* AR. 175-80). Plaintiff completed high school in Iraq (AR. 34). Plaintiff has work experience doing janitorial work and housecleaning (AR. 35, 196). At the time of the hearing she testified that she was working two or three days a week cleaning a friend's house when she felt able to do it (AR. 35).

According to the ALJ, plaintiff has at least the severe impairments of "affective disorder and anxiety disorder (20 CFR 416.920(c))" (AR. 16).

At the time of the hearing, plaintiff was living with her three children (AR. 36-37).

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* AR. 81-89, 91-97). Plaintiff's requested hearing was held before Administrative Law Judge M.J. Adams ("the ALJ") on January 29, 2014 (*see* AR. 29-48). A supplemental hearing was held on August 6, 2014 for the testimony of an impartial vocational expert (*see* AR. 49-55). On September 15, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 14-24).

On January 5, 2016, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (AR. 1-4). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in March, 2016 (*see* Dkt. 3). Defendant filed the sealed administrative record regarding this matter ("AR.") on July 15, 2016 (*see* Dkt. 9).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether the ALJ erred in failing to properly address the opinions of the treating and examining providers in the record; (2) Whether substantial evidence supports the ALJ's conclusion that the plaintiff had the residual functional capacity to perform work with the ability to carry out simple instructions, respond appropriately to supervision and co-workers, and occasional interaction with the general public; and (3) Whether the ALJ erred in failing to

provide legitimate reasons supported by the record for his finding on credibility (*see* Dkt. 13, p. 1).

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

(1) **Whether the ALJ erred in failing to properly address the opinions of the treating and examining providers in the record**.

Plaintiff contends that the ALJ erred when evaluating the medical evidence, such as that provided by examining doctor, Dr. Kathleen Andersen, M.D. (*see* AR. 401-07). Defendant contends that the ALJ's review of Dr. Andersen's opinion is free of legal error.

When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

a. **Dr**. **Andersen, examining doctor**

Dr. Andersen examined plaintiff on May 22, 2013 (*see* AR. 401-07). Dr. Andersen conducted her examination with the assistance of an interpreter, noting plaintiff's report that she speaks "very limited English" (AR. 401). Plaintiff reported that she was depressed, having nightmares, and was easily irritated and getting nervous (*id*.). Plaintiff reported that her medications and counseling were not helping (*id*.). Dr. Andersen noted plaintiff's report that she heard voices (AR. 402). Plaintiff reported that she "experiences these daily" (*id*.). Dr. Andersen noted plaintiff's report that concentration was "a major problem" for her (*id*.). Plaintiff reported to Dr. Andersen that she started working for a friend on November 7, 2011 (AR. 403). She reported working at his business doing cleaning chores 1 to 2 hours a day (*id*.). Plaintiff also reported being in school from noon to 2 PM, taking ESL classes (*id*.). She reported seeing some friends at college, and also reported that she has two male friends, one of whom drives her to and from college, with the other one being the one she works for (AR. 404).

Contrary to plaintiff's reports to Dr. Andersen, Dr. Andersen noted that she had some pages of plaintiff's treatment record, which included "a note from her ARNP, Mustapha Hydara, from April 26, 2012 [indicating] that she found current medications helpful," and included the specification that plaintiff's "sleep was 'good on most nights' and Trazodone was effective when she used it" (*id*.). This treatment record also indicates that plaintiff purposely chose not to use her medication "because she wanted to keep an eye on her older son" (*id*.). Dr. Andersen also noted that this treatment record indicated

that plaintiff had not been taking her prescribed Lorazepam, but "had followed a suggestion to implement an exercise routine and did find it helpful [and] felt her mood was improving" (*id*.). Also included in this treatment record was plaintiff's report that "overall, she thinks her PTSD symptoms are under control despite ongoing stress [and] feels her concentration and memory have improved as well" (*id*.). Dr. Andersen noted the report from Ms. Hydara on September 5, 2012, that plaintiff "continued to find her medications helpful but that she was 'very stressed out'" (*id*.). Dr. Andersen noted a treatment record from December 6, 2012, where plaintiff "found the Trazodone helpful but she simply did not take it because she did not want to sleep deeply" (AR. 404-05).

Dr. Andersen conducted a mental status examination ("MSE") (*see* AR. 405-06). Dr. Andersen noted that when she went to get plaintiff from the waiting room, plaintiff "was chatting with her friend and the interpreter" (AR. 405). Dr. Andersen noted that plaintiff "appeared to be able to attend well to the interview questions for about an hour" (*id*.). She noted that plaintiff was cooperative, with good eye contact and no psychomotor agitation or retardation (*id*.). Dr. Andersen noted plaintiff's report that sometimes she did not remember the names of her sons and that she could not provide their ages at that time, although plaintiff checked her cell phone to help her provide other information (*id*.). Dr. Andersen noted plaintiff's report that she experienced "auditory hallucinations with voices giving her advice on what to do, at times yelling at her" (*id*.).

Dr. Andersen found it interesting that plaintiff "talked about her extensive amnesia without any particular show of emotion" (*id*.). Dr. Andersen indicated in her final summary that regarding plaintiff's amnesia, "one would think [it] would be something

that would be fairly distressing to someone" (AR. 407). Dr. Andersen indicated that "neuropsychological testing potentially could be quite helpful in sorting out any volitional component to her amnesia" (*id*.). She also indicated that there "potentially could be issues of primary and secondary gain, but again, this would need to be further evaluated" (*id*.).

Dr. Andersen opined that plaintiff would have significant problems maintaining any sort of employment, and opined that plaintiff "would have marked difficulty concentrating on even simple or straightforward tasks related to her low energy, anxiety, and the intrusion of auditory hallucinations" (*id*.). Dr. Andersen opined that plaintiff also "would have marked difficulty persisting at tasks and completing tasks related to these," and would have marked to severe difficulty interacting appropriately and consistently in relationships with coworkers, supervisors, and the public (*id*.). Dr. Andersen noted plaintiff's report "that sometimes she talks to the voices out loud, which clearly would be disturbing in a work environment" (*id*.).

The ALJ failed to credit fully Dr. Andersen opinion (AR. 22). One of the reasons provided by the ALJ for failing to credit fully this opinion was that Dr. Andersen "completely disregarded the fact that the claimant was working part-time cleaning, a job that involves simple tasks" (*id*.). It is clear that the ALJ found plaintiff's ability to work part-time cleaning to be inconsistent with Dr. Andersen's opinion that plaintiff "would have marked difficulty concentrating on even simple or straightforward tasks related to her low energy, anxiety, and the intrusion of auditory hallucinations" (AR. 407). This finding by the ALJ is supported by substantial evidence in the record as a whole. Dr.

Andersen's opinion that plaintiff would have marked difficulty concentrating on even simple or straightforward tasks is inconsistent with plaintiff's acknowledgment that she worked a couple hours a day completing simple tasks of cleaning. This rationale provides some support for the ALJ's decision not to credit fully Dr. Andersen's opinion.

The ALJ also relied on a finding that "Dr. Andersen considered information that was not reported elsewhere, such as auditory hallucinations" (AR. 22). This finding, too, is based on substantial evidence in the record as a whole. Dr. Andersen explicitly indicated that her opinions regarding plaintiff's limitations were based in part on plaintiff's auditory hallucinations (*see* AR. 47). In addition, the ALJ's finding that elsewhere in the record, plaintiff reported that she did not have auditory hallucinations, is based on substantial evidence in the record as a whole. For example, on March 19, 2012, plaintiff's MSE indicated that, regarding hallucinations, there were "none at present time" (AR. 271). Similarly, on November 15, 2012, plaintiff's MSE indicated that plaintiff was not suffering from any auditory, visual or tactile hallucinations (AR. 321). Dr. Anderson's examination occurred approximately 4 months after this last report from plaintiff's treatment record indicating that plaintiff did not suffer from any hallucinations. These reports of a lack of hallucinations are consistent with reports from earlier in plaintiff's treatment record, as well (*see, e.g.,* AR. 381 (6/7/11 indication of no hallucinations")). Furthermore, less than a month after plaintiff's May, 2013 examination with Dr. Anderson, on June 13, 2013, plaintiff reported no hallucinations (AR. 409; *see also* AR. 408).

Although plaintiff argues that perhaps she was suffering from hallucinations, but was afraid to report them or failed to report them, this is an alternative interpretation of the evidence. The ALJ's interpretation of the evidence is supported by substantial evidence in the record as a whole. It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599, 601 (9th Cir. 1999)). Here, the ALJ noted that plaintiff's treatment record indicates that plaintiff repeatedly was reporting no hallucinations; however, she reported to Dr. Andersen that she was experiencing auditory hallucinations and that she sometimes would speak out loud in response. Dr. Andersen clearly relied on plaintiff's report of auditory hallucinations when providing her opinion regarding functional limitations (*see* AR. 407). For the reasons stated, the Court concludes that the ALJ's reliance on this discrepancy for the failure to credit fully the opinion of Dr. Andersen is a specific and legitimate reason based on substantial evidence in the record as a whole for failing to credit fully her opinion.

The Court notes that the ALJ also relied on a finding that "Dr. Andersen's [MSE] findings were starkly different from other providers' observations" (AR. 22 (citing AR. 415)). Although plaintiff contends that the ALJ "pointed to no evidence and did not cite to the record in arguing that Dr. Andersen's mental status examination findings were 'starkly different' from other providers' observations," plaintiff's contention is incorrect, as the ALJ clearly cited and relied on the record for this finding (*see* Dkt 13, pp. 6-7; *see*

1   *also* AR. 22). Furthermore, this finding is based on substantial evidence in the record as a

2   whole. For example, during mental status examination on July 26, 2013, the record cited

3   by the ALJ, plaintiff was observed to be fully alert and oriented, with "intact attention

4   and memory" (AR. 415). This evaluation occurred approximately 2 months after the

5   examination by Dr. Andersen and the ALJ's finding that it is "starkly different" from Dr.

6   Andersen's opinion is a finding based on substantial evidence in the record as a whole.

7   "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

8   "'relevant evidence as a reasonable mind might accept as adequate to support a

9   conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v.*

10   *Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

11

12       For the reasons stated and based on the record as a whole, the Court concludes that

13   the ALJ did not commit harmful legal error when evaluating the medical evidence from

14   examining doctor, Dr. Andersen.

15          b.  **Ms**. **Risho Sapano, M.A., lay opinion evidence**

16

17       Plaintiff also contends that the ALJ erred by failing to credit fully the opinion

18   evidence provided by one of plaintiff's therapists, Ms. Sapano. Defendant contends that

19   there is no error.

20       Pursuant to the relevant federal regulations, in addition to "acceptable medical

21   sources," that is, sources "who can provide evidence to establish an impairment," 20

22   C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

23   who are defined as "other non-medical sources" and "other sources" such as nurse

24

practitioners, physician assistants, therapists and chiropractors, who are considered other

medical sources, *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec*.,

613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. § 404.1513(a), (d)); Social

Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ

may disregard opinion evidence provided by both types of "other sources," characterized

by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness

for doing so.'" *Turner, supra*, 613 F.3d at 1224 (quoting *Lewis v. Apfel*, 236 F.3d 503,

511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

1996).

The Court notes that one of the reasons offered by the ALJ for failing to credit

fully the opinion of Ms. Sapano is not based on substantial evidence in the record as a

whole, as Ms. Sapano  provided a function-by-function breakdown of her opinion

regarding plaintiff's functional capacity. However, the Court concludes that this is

harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the

Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

(citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th

Cir. 2006) (collecting cases)). The court noted that "several of our cases have held that an

ALJ's error was harmless where the ALJ provided one or more invalid reasons for

disbelieving a claimant's testimony, but also provided valid reasons that were supported

by the record." *Id.* (citations omitted). Courts must review cases "'without regard to

errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (quoting *Shinsheki*

1  *v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111) (codification of the

2  harmless error rule)).

3        Here, the Court concludes that the ALJ provided germane reasons supported by

4  substantial evidence in the record for giving "no weight" opinions of Ms. Sapano (AR.

5  22). For example, the ALJ found that Ms. Sapano "acted as an advocate for the

6  claimant's disability application rather than a neutral provider," noting that she "helped

7  the claimant complete application paperwork and gave information to the claimant about

8  SSI appeals" (*id.* (citing AR. 408-10)). This finding by the ALJ is based on substantial

9  evidence in the record as a whole. The record reflects that one of plaintiff's treatment

10  sessions with Ms. Sapano "focused on helping client fill out SSI forms regarding her

11  employment" (AR. 408). As argued by defendant, a treatment "provider's opinion can be

12  called into question and given less weight when the provider is also an advocate" (Dkt.

13  14, p. 9 (citing *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996); *Matney v. Sullivan*,

14  981 F.2d 1016, 1020 (9th Cir. 1992)). In response to plaintiff's argument that the only

15  basis for this finding by the ALJ was that Ms. Sapano helped plaintiff fill out her forms,

16  defendant argues that "the extreme nature of [Ms. Sapano's] opinions suggests

17  otherwise" (*id.*). Defendant contends that the fact that Ms. Sapano concluded that

18  plaintiff has experienced 1 to 2 episodes of decompensation, of extended duration, when

19  the record does not contain any evidence showing any episodes of decompensation of

20  extended duration supports the ALJ's finding that Ms. Sapano was acting as an advocate

21  for plaintiff and not as a neutral treatment provider (*id.* (citing AR. 427-30). Plaintiff does

22  not refute defendant's argument that there is no evidence in the record of any episodes of

decompensation of extended duration (*see* Dkt. 15, pp. 5-6). In contrast to the lack of

evidence for any episodes of decompensation of extended duration, Ms. Sapano indicated

her opinion that plaintiff had suffered between one and two such episodes (*see* AR. 430).

Based on the record as a whole, Court concludes that the ALJ's finding that Ms. Sapano

acted as an advocate for plaintiff's disability application rather than a neutral provider is

based on substantial evidence in the record as a whole. It also entails a germane reason

for failing to give any weight to this opinion.

In addition, the Court concludes that the ALJ offered another germane reason for

failing to give any weight to the opinion of Ms. Sapano. The ALJ found that her opinion

"is not consistent with the record in that the claimant has already shown that she could

perform[] simple jobs (albeit part-time) on a regular and continuous basis" (AR. 22).

Although plaintiff characterizes her ability to work as being "at most for a few hours

twice a week" (Dkt. 13, p. 11), plaintiff reported to Dr. Anderson that she was doing

cleaning chores at a friend's business "one to two hours a day" (AR. 403). Shortly

thereafter during the interview, plaintiff reported that "typically," she goes to ESL classes

from 12:00 to 2:00, and then "when she is done with the classes she goes to her job for an

hour to two hours [and] gets home around 4:00" (AR. 403-04). As it is common during

the MSE for an evaluator to ask the client what they do on a typical day, and as plaintiff

indicated that "typically" she goes to classes for two hours, then goes to her job for an

hour to two hours, the ALJ's finding that plaintiff "could perform a simple job[] (albeit

part-time) on a regular and continuous basis" is a finding based on substantial evidence in

the record as a whole. Furthermore, the ALJ's finding that plaintiff's "problems have not

impacted her to the point that she could not keep a [part-time] job" also is a finding based on substantial evidence in the record as a whole. Finally, the ALJ's finding that Ms. Sapano's opinion is not consistent with plaintiff's ability to perform this job for 1 to 2 hours a day on a regular and continuous basis is a finding based on substantial evidence in the record as a whole. For example, Ms. Sapano opined that plaintiff's ability to remember locations and work like procedures was severely limited, the highest level of limitation available on this part of the form; that plaintiff suffered from marked limitation in her ability to understand and remember short and simple repetitive instructions or tasks (AR. 427); and, that she suffered from extreme difficulties maintaining concentration, persistence or pace, the highest level of limitation on that part of the form (AR. 430).

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ offered germane rationale for failing to credit fully the lay opinion of Ms. Sapano.

**(2)    Whether substantial evidence supports the ALJ's conclusion that the plaintiff had the residual functional capacity to perform work with the ability to carry out simple instructions, respond appropriately to supervision and co-workers, and occasional interaction with the general public**.

If the ALJ cannot determine whether or not a claimant is disabled based on a claimant's current work activity or on medical factors alone and a claimant has a severe impairment, a review is made of the claimant's residual functional capacity ("RFC"). *See* Social Security Ruling "SSR" 96-8p, 1996 SSR LEXIS 5 at *3-*4. RFC is the most a claimant can do despite existing limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c).

1  Plaintiff contends that the ALJ erred when providing an assessment regarding
2  plaintiff's RFC. However, as noted by defendant, plaintiff's argument in this respect
3  largely relies on her previous arguments that "none of the examining or treating opinions
4  of record are consistent with [the ALJ's RFC determination]" (Dkt. 13, p. 12). Plaintiff
5  cites some evidence from the record supporting plaintiff's argument, but none of these
6  entail significant and probative evidence that the ALJ erred by failing to accommodate.
7  Although plaintiff argues that if the ALJ had credited the evidence cited by plaintiff,
8  "more significant limitations would be supported in the formulation of the RFC," the
9  Court already has upheld the ALJ's review of the medical evidence and finds that the
10  ALJ cited at least substantial evidence in the record supporting the relevant findings (Dkt.
11  13, p. 14). As noted previously, it is not the job of the court to reweigh the evidence: If
12  the evidence "is susceptible to more than one rational interpretation," including one that
13  supports the decision of the Commissioner, the Commissioner's conclusion "must be
14  upheld." *Thomas*, 278 F.3d at 954 (citing *Morgan, supra,* 169 F.3d at 599, 601).

**(3)   Whether the ALJ erred in failing to provide legitimate reasons supported by the record for his finding on credibility**.

15  Plaintiff contends that the ALJ erred when failing to credit fully plaintiff's
16  allegations and testimony about the severity of her limitations. Defendant contends that
17  there is no harmful legal error.
18  If an ALJ rejects the testimony of a claimant once an underlying impairment has
19  been established, the ALJ must support the rejection "by offering specific, clear and
20  convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)

(citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("There is no conflict in the caselaw, and we reject the government's argument that *Bunnell* excised the "clear and convincing" requirement"); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan, supra*, 947 F.2d at 343, 346-47). As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and analyzing a claimant's testimony regarding limitations lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (citing *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)).

Although it is possible that not every reason offered by the ALJ was legitimate, any error is harmless. *See Molina*, 674 F.3d at 1115, 1118 (citing *Stout*, 454 F.3d at 1054) (collecting cases) (other citations omitted) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

Here, the ALJ offered numerous reasons for failing to credit fully plaintiff's testimony and allegations. For example, the ALJ found that there were several inconsistencies in the record, calling into question plaintiff's allegations of limitations.

For example, as noted by the ALJ, plaintiff "complained about numbness and tingling for the first time in 2013 (after she submitted an application for disability), even though it supposedly had been 'years ago' when these problems started; she never listed any physical condition on her initial disability report" (AR. 19-20 (citing AR. 322-400, 411-25)). These findings by the ALJ are supported by substantial evidence in the record as a whole. On plaintiff's initial disability report, where asked to list all of the physical or mental conditions that limit her ability to work, plaintiff included only "mental conditions" (*see* AR. 190). In addition, on plaintiff's function report dated May 6, 2013, where asked to describe how her illnesses, injuries, or conditions limit her ability to work, plaintiff indicated that her "mental health has greatly affected my ability to function," noting memory and concentration problems, along with sleeping difficulties, panic attacks and anxiety (AR. 203). There is no mention here of any physical illnesses, symptoms, injuries, or conditions (*see id.*). Similarly, Dr. Andersen noted that when plaintiff was "asked about medical problems, she mentions only allergies" (AR. 403). However, on July 26, 2013, plaintiff indicated that she suffered from numbness and tingling in all her extremities, which "started years ago, but is now worse" (AR. 414). Regarding the ALJ's other rationale for failing to credit fully plaintiff's allegations regarding disabling memory and attention difficulties, (inconsistency with the record), at this examination, plaintiff was observed to be fully alert and oriented with "intact attention and memory" (AR. 415; *see also* AR. 20).

The ALJ's findings that plaintiff did not list any physical condition on her initial disability application, that plaintiff did not report any limitations from physical symptoms

1    or conditions until well after she applied for disability, that plaintiff complained about

2    numbness and tingling for the first time in 2013, and that plaintiff reported that this

3    numbness and tingling had started years prior all are supported by substantial evidence in

4    the record as a whole. Also supported by substantial evidence in the record as a whole is

5    the ALJ's implication that plaintiff's allegation that her symptoms of numbness and

6    tingling started years prior to 2013 is inconsistent with the record which demonstrates

7    that she reported not having any physical conditions or reported "only allergies" (*see,*

8    *e.g.*, AR. 190, 403). These findings and the ALJ's implication based on them support the

9    ALJ's failure to credit fully plaintiff's allegations and testimony regarding her

10   limitations, especially as it relates to plaintiff's allegation of physical limitations.

11   

12          The ALJ also found another inconsistency: plaintiff reported "that she had no

13   friends, yet she testified that she worked for a friend doing cleaning" and "referred to

14   friends in multiple places in the record" (AR. 20 (citing AR. 29-48, 203-10, 407, 414);

15   *see also* AR. 204 ("family friends, they help me to drive me [to] shopping and take care

16   of the boys, guidance and take them to places for entertainment"), 414 (plaintiff reported

17   that she "often needs to call a friend to help her find her car")). The Court notes that Dr.

18   Andersen noted plaintiff's report that she had male friends, one of whom she worked for

19   and another one who drove her to classes, and, also noted that plaintiff "says that friends

20   she knows in school help her out with her studies" (*see* AR. 403, 404). The Court

21   concludes that the ALJ's finding of an inconsistency between plaintiff's report that she

22   has no friends and her comments throughout her treatment record is a finding based on

23   substantial evidence in the record as a whole. The Court also concludes that this

24

inconsistency supports the ALJ's failure to credit fully plaintiff's allegations and

testimony regarding her limitations, especially alleged social limitations.

The ALJ also noted that plaintiff "gave conflicting reasons for visiting Iraq

(visiting sick mother-in-law versus wanting her son to live in a different environment)"

(AR. 20 (citing AR. 29-48, 251); *see also* AR. 36, 38, 39). Although this rationale is

based on substantial evidence in the record as a whole, it does not appear to bear

substantially on the reliability of plaintiff's allegations and testimony.

The ALJ also found that the objective medical evidence does not support

plaintiff's allegations, noting, for example, that MSE findings were normal and that her

provider stated that plaintiff's "cognitive impairment appeared to be only mild from a

functional perspective" (AR. 20-21 (citing exhibit AR. 415-16, 424 ("normal brain MR

without contrast")). The Court already has noted that on July 26, 2013, plaintiff was

observed to be fully alert and oriented with "intact attention and memory" (AR. 415).

This finding is consistent with numerous other opinions and references throughout the

treatment record (*see, e.g*., AR. 289 (4/26/12 treatment record indicating that plaintiff

was: "Euthymic [normal non-depressed, reasonably positive mood], mood congruent . .

. . memory grossly intact"), 293 (12/22/11 treatment record indicating that plaintiff

found "current meds helpful  . . . .  Noticed some improvement in concentration but still

gets occasional forgetfulness. She thinks that is all due to the stress of raising her oldest

son  . . . .  Sleep, 'OK', about 2-3 hour increments, and a total of about eight hours.

Nightmares occur, 'But occasionally. Only when I am stressed.' Overall she thinks her

PTSD symptoms are under control"), 321 (11/15/12 treatment record indicating that

plaintiff's mood was euthymic, her affect was expressive, her eye contact was good, she reported no hallucinations, demonstrated vigilant memory/concentration, but no other symptoms), 381 (6/7/11 treatment record indicating that although plaintiff reported that her symptoms were high, and she demonstrated a depressed mood, she nevertheless had an expressive affect, good eye contact, no hallucinations, appropriate grooming, no memory/concentration issues and no other symptoms), 408 (6/20/13 treatment record indicating that despite plaintiff's report of anxiety, stress and fatigue issues, and only sleeping 2 to 3 hours a night, and despite her depressed mood and sad affect, plaintiff reported no hallucinations, demonstrated good eye contact, appropriate grooming, and no issues with memory/concentration and no other symptoms)). Although plaintiff cites to some evidence in the record suggesting that she did occasionally have some difficulties, it is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas*, 278 F.3d at 954 (citing *Morgan, supra,* 169 F.3d at 599, 601). Here, substantial evidence in the record as a whole supports the ALJ's finding of an inconsistency between plaintiff's report of disabling memory and concentration difficulties and the treatment record. This inconsistency also supports the ALJ's decision not to credit fully plaintiff's allegations and testimony, especially as related to alleged memory and concentration difficulties.

    Based on the stated reasons and the record as a whole, the Court concludes that the ALJ offered specific, clear and convincing reasons for failing to credit fully plaintiff's testimony and allegations that are based on substantial evidence in the record as a whole.

1

CONCLUSION

2

Based on the stated reasons and the relevant record, the undersigned recommends

3

that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

4

**JUDGMENT** should be for **defendant** and the case should be closed.

5

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

6

fourteen (14) days from service of this Report to file written objections. *See also* Fed. R.

7

Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

8

purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

9

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

10

matter for consideration on December 16, 2016, as noted in the caption.

11

Dated this 22nd day of November, 2016.

12

13

14

J. Richard Creatura
United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24